ERNEST FRANCIS *v.* JOHN W. FONFARA ET AL.
(SC 18480)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and
Harper, Js.

Argued October 21, 2011—officially released January 3, 2012

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Dana M. Hrelic*, for the plaintiff in error.

*Jane R. Rosenberg*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the defendant in error.

*Opinion*

EVELEIGH, J. The sole issue in this writ of error is whether the plaintiff in error, State Marshal Lisa H. Stevenson (plaintiff), was entitled to a fee for copies of a complaint handled in connection with her service of process in a civil action pursuant to General Statutes § 52-261 (a) (2),[1] despite the fact that she did not person-

[1] General Statutes § 52-261 (a) provides in relevant part: "[E]ach officer or person who serves process, summons or attachments shall receive a fee of not more than thirty dollars for each process served and an additional fee of thirty dollars for the second and each subsequent service of such process, except that such officer or person shall receive an additional fee of ten dollars for each subsequent service of such process at the same address . . . . Each such officer or person shall also receive the fee set by the Department of Administrative Services for state employees for each mile of travel, to be computed from the place where such officer or person received the process to the place of service, and thence in the case of civil process to the place of return. If more than one process is served on one person at one time by any such officer or person, the total cost of travel for the service shall be the same as for the service of one process only. . . . *The following fees shall be allowed and paid:* (1) For taking bail or bail bond, one dollar; (2) *for copies of writs and complaints, exclusive of endorsements, one dollar per page, not to exceed a total amount of nine hundred dollars in any particular matter;* (3) for endorsements, forty cents per page or fraction thereof; (4) for service of a warrant for the seizure of intoxicating liquors . . . twenty dollars; (5) for the removal and custody of such liquors so seized, reasonable expenses, and twenty dollars; (6) for the levy of an execution . . . fifteen per cent on the amount of the execution, provided the minimum fee for such execution shall be thirty dollars; (7) on the levy of an execution on real property . . . reasonable and customary expenses; (8) for causing an execution levied on real property to be recorded, fees for travel, twenty dollars and costs; (9) for services on an application for the sale of personal property attached, or in selling mortgaged property foreclosed under a decree of court, the same fees as for similar services on executions; (10) for committing any person to a community correctional center, in civil actions, twenty-one cents a mile for travel, from the place

ally make the copies. We conclude that the defendant in error, the trial court, improperly denied the plaintiff's request for fees and, accordingly, we grant the writ of error.

The record reveals the following relevant facts and procedural history. The named plaintiff in the underlying action, Ernest Francis, brought a declaratory judgment action in the judicial district of Hartford against all 185 members of the Connecticut General Assembly, including the named defendant, John W. Fonfara. Francis sought and received a waiver of the entry fee and the process server's service fees pursuant to Practice Book § 8-2,[2] including a fee for copies pursuant to § 52-261 (a) (2). As the result of this waiver, the state, pursuant to General Statutes § 52-259b,[3] was responsible for paying the process server's fees. After receiving a box from Francis with a sufficient quantity of copies to serve all 185 defendants, the plaintiff inquired with the

of the court to the community correctional center, in lieu of all other expenses; and (11) for summoning and attending a jury for reassessing damages or benefits on a highway, three dollars a day. The court shall tax as costs a reasonable amount for the care of property held by any officer under attachment or execution. The officer serving any attachment or execution may claim compensation for time and expenses of any person, in keeping, securing or removing property taken thereon, provided such officer shall make out a bill. The bill shall specify the labor done, and by whom, the time spent, the travel, the money paid, if any, and to whom and for what. The compensation for the services shall be reasonable and customary and the amount of expenses and shall be taxed by the court with the costs." (Emphasis added.)

[2] Practice Book § 8-2 provides in relevant part: "(a) Prior to the commencement of an action, or at any time during its pendency, a party may file with the clerk of the court in which the action is pending, or in which the party intends to return a writ, summons and complaint, an application for waiver of fees payable to the court and for payment by the state of the costs of service of process. . . ."

[3] General Statutes § 52-259b (a) provides: "In any civil or criminal matter, if the court finds that a party is indigent and unable to pay a fee or fees payable to the court or to pay the cost of service of process, the court shall waive such fee or fees and the cost of service of process shall be paid by the state."

office of the attorney general and received direction on how to address the service of process. Thereafter, the plaintiff properly effectuated service on all 185 defendants by leaving process for each with an associate attorney general, pursuant to General Statutes § 52-64.[4] The plaintiff did not make the copies; Francis' son had them made at his expense. The copies complied, however, with the requirements of § 52-64 in that the plaintiff confirmed that each was exactly the same as the original, and thereon endorsed her attestation that each was a true copy of the original. Subsequently, the plaintiff submitted an invoice claiming fees of, inter alia, $900 for copies of the complaint.[5]

Thereafter, the trial court conducted a hearing on its own motion to review the fees charged by the plaintiff. The trial court subsequently issued a memorandum of decision in which it allowed the plaintiff's requested service, mileage, and endorsement fees, but disallowed the $900 fee for copies. This writ of error followed.[6]

[4] General Statutes § 52-64 provides: "Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as such, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the Attorney General's office in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the Attorney General's office in Hartford."

[5] It is uncontested that if the plaintiff is due the fee for copies she handled and confirmed to be accurate, even if she did not make them, the $900 fee was correctly calculated. More than 900 pages of copies, the maximum number for which the $1 fee for copies applies under § 52-261 (a) (2), were handled and confirmed by the plaintiff in order to serve individual copies of the original seven page complaint on the 185 defendants.

[6] After the deadline to file an appeal expired pursuant to Practice Book § 63-1, the plaintiff filed with this court a motion pursuant to Practice Book §§ 60-2 and 60-3 for permission to file a late writ of error and a writ of error. We granted the motion for permission to file, and the plaintiff's writ was thereafter filed.

The plaintiff claims that the trial court improperly disallowed the fee for copies because, although the trial court properly determined that § 52-261 (a) (2) was ambiguous, it failed to consider relevant and compelling legislative history when it considered extratextual evidence of the meaning of the statute. The plaintiff contends that the legislative history demonstrates a clearly expressed intent for process servers to be paid the fee for copies, regardless of whether they actually make the copies. The trial court now contends, contrary to its memorandum of decision, that § 52-261 (a) (2) is plain and unambiguous when read in context. According to the trial court, § 52-261 (a) requires payment only for services actually performed, including the making of copies. Therefore, the trial court further contends that, pursuant to General Statutes § 1-2z,[7] we may not consider extratextual sources to determine legislative intent, but must enforce the plain meaning of the statute. The trial court further responds that, even if we find that the language of § 52-261 (a) (2) is not plain and unambiguous, it nevertheless properly exercised its discretion in refusing to grant the requested fee for copies. We agree with the plaintiff and conclude that the fee for copies is not contingent upon the process server personally making the copies.[8]

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[8] The plaintiff further contends that if we agree with the trial court that § 52-261 (a) (2) clearly and unambiguously indicates that a process server may not charge a fee for copies she did not make, and, accordingly, that § 1-2z precludes this court from referring to extratextual evidence of statutory meaning, § 1-2z is unconstitutional as violative of the doctrine of separation of powers. The trial court responds that § 1-2z is constitutional because the power to establish rules of statutory construction does not lie exclusively within the control of the judicial branch or significantly interfere with the orderly conduct of the court's judicial functions. In light of our conclusion that § 52-261 (a) (2) is ambiguous, we need not, and in fact, cannot, resolve

Whether § 52-261 (a) (2) entitles a process server to the fee for copies, even if she has not personally made the copies, is a question of statutory interpretation "over which we exercise plenary review. . . . The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 332–33, 984 A.2d 684 (2009). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 679, 986 A.3d 290 (2010).

the plaintiff's claim that § 1-2z is unconstitutional as violative of the doctrine of separation of powers. To do so would result in nothing more than an advisory opinion, and "[w]e have consistently held that we do not render advisory opinions. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6–7, 688 A.2d 314 (1997).

Section 52-261 (a) provides in relevant part: "The following fees shall be allowed and paid . . . (2) for copies of writs and complaints, exclusive of endorsements, one dollar per page, not to exceed a total amount of nine hundred dollars in any particular matter . . . ." The trial court now contends that the only reasonable interpretation of the statute is that the process server claiming the statutory fee for copies personally must make the copies in order to be paid, because to conclude otherwise would lead to the absurd result that the fee could be paid for doing absolutely nothing. The plaintiff contends that it would be reasonable to conclude that the fee is due regardless of who makes the copies, because the fee for copies also compensates the process server for handling and reviewing the copies to ensure accuracy. We find both interpretations reasonable, and, accordingly, we conclude that the statute is ambiguous.

It is significant that this subdivision of the statute does not employ a gerund, as other subdivisions of the statute do, to specify for which act, if any, compensation shall be paid. For example, almost all of the other subdivisions of § 52-261 (a) suggest a necessary action to qualify for the fee, such as "taking," "service," "removal," "levy," "causing," "committing," and "summoning and attending . . . ."[9] Subdivision (2) of § 52-261 (a) does not provide a fee "for making copies," "for copying" or "for ensuring the accuracy of copies," nor does it expressly reference expense reimbursement, as do subdivisions (5), (7), (8) and (10) of the statute.[10] Only one other subdivision is similarly silent as to action; General Statutes § 52-261 (a) (3); and provides fees "for endorsements, forty cents per page or fraction thereof . . . ." General Statutes § 52-261 (a) (3).

[9] See footnote 1 of this opinion.
[10] See footnote 1 of this opinion.

In accordance with the requirements of § 1-2z, we also look to related statutes in construing § 52-261, which provide for payment for fees and expenses of persons serving civil process. Chapter 896, General Statutes § 52-45a et seq., governs civil process. Chapter 896 requires that "a proper officer" must serve on each defendant a "true and attested copy" of process.[11] See, e.g., General Statutes §§ 52-57, 52-59b, 52-59c, 52-63 and 52-64. Nowhere in that chapter, however, is there a requirement that copies be made by the process server. Because it is clear that a copy of the complaint must be "true and attested," but the statutes are silent as to any requirement of who must make a copy, it is reasonable to conclude that the statutory fee for copies is intended to compensate the process server for handling and reviewing each copy to ensure that it is a true copy of the original, regardless of whether the copy was made by the process server. Contrary to the trial court's contention that making the copy is the only plausible task related to the service of copies of complaints and writs, handling and ensuring that a copy is true are acts required of the process server for each copy, regardless of whether the process server makes the copy.

Although this analysis strongly indicates that the fee for copies is compensation for handling and ensuring copies of complaints and writs are true, whatever that may entail, and therefore in compliance with chapter 896, we nevertheless acknowledge that the interpretation advanced by the trial court is reasonable, as well. Because it is clear that the legislature can indicate a necessary action, or condition payment on the showing

---

[11] Under General Statutes § 52-50, a "proper officer" means a "state marshal, a constable or other proper officer authorized by statute, or, subject to the provisions of subsection (b) of this section, to an indifferent person." For clarity and convenience, in this opinion we refer to anyone authorized to serve process under § 52-50 as a process server.

of incurred expenses, it is reasonable to conclude, as the plaintiff now contends, that the fee for copies is to compensate the process server for handling copies of writs and complaints, regardless of whether the copies were made by the process server. Because the fee is calculated per page of each copy, it is also reasonable to conclude, as the trial court contends, that it is not a fee for handling and delivery, but compensation for expenses incurred in creation of each copy. Accordingly, we conclude that the statute is subject to multiple competing reasonable interpretations, and accordingly is ambiguous. Therefore, in accordance with § 1-2z, we review the legislative history of § 52-261.

In 1981, the legislature adopted an amendment to § 52-261 that, inter alia, increased the fee for copies from sixty cents per page to $1 per page. See Public Acts 1981, No. 81-80, § 1. The role of the process server and the fee for copies were expressly discussed, first at a judiciary committee hearing,[12] and later on the floor of the House of Representatives.[13] In both sessions,

---

[12] The following exchange took place in the judiciary committee between Representative Antonina Parker and Senator Joseph Flynn:

"[Representative Parker]: . . . Do [process servers] know . . . [w]hat they are serving?

"[Senator Flynn]: Yes, they do know what papers they are serving and the reason why they have to know is that on the paper that is actually served on the defend[a]nt, they must make an endorsement on the back of it stating that this is a true copy of the original. *Their job is to serve an exact copy of whatever the original writ or process is the subject of the lawsuit.* So they would know what the particular kind of process they were serving even if they might not understand all the implications of it, they'd at least have to know that the copy served on the defend[a]nt met in every particular the exact text of the original document." (Emphasis added.) Conn. *Joint Standing Committee Hearings, Judiciary Committee,* Pt. 3, 1981 Sess., p. 811.

[13] The following exchange occurred on the floor of the House of Representatives between Representative R. E. Van Norstrand and Representative Richard Tulisano:

Representative Van Norstrand asked: "If the plaintiff, or presumably the plaintiff's attorney, supplies the copies is there to be a charge under this [s]tatute?" 24 H.R. Proc., Pt. 5, 1981 Sess., p. 1668.

Representative Tulisano responded: "I believe they charge the same *no matter who provides the copies.* I think that's the custom that exists now

there was a clear legislative intent expressed that, in accordance with the custom and practice then existing, the fee for copies be paid regardless of who actually makes the copies, and as compensation for the process server's job of ensuring the accuracy of the copies. Our review of the remaining legislative history and genealogy of the statute has revealed no evidence to support a contrary interpretation.[14] Such clear evidence of legislative intent, particularly when considered in concert with the weight of the textual evidence supplied by chapter 896, leaves no doubt that the fee for copies under § 52-261 (a) (2) is not contingent upon the process server's making the copies.

The trial court contends, however, that it retains discretion in awarding fees for service of process and urges us to affirm its refusal to order the fee for copies as an exercise of that discretion. The plaintiff responds that the trial court's interpretation of § 52-261 (a) (2) was a misapplication of the law and thereby constitutes an abuse of discretion. We agree with the plaintiff. There is nothing in the record to suggest that the trial court's decision to deny the requested fee for copies was an exercise of discretion, rather than a misapplication of the law.

In determining whether a trial court may exercise its discretion in determining the fee for copies, or whether

and they charge it no matter who provides it. So I anticipate that would continue." (Emphasis added.) Id., pp. 1668–69.

[14] Indeed, counsel for the trial court conceded at oral argument before this court that, prior to rendering its decision, it did not review either the 1981 legislative history nor similarly compelling 1961 legislative history. See Public Acts 1961, No. 311 (removing language added earlier in session; Public Acts 1961, No. 122; that permitted fee for copies only "if prepared by the sheriff or person making such service"). To its credit, the trial court does not now argue that the legislative history of § 52-261 plausibly indicates that the legislature intended for the fee for copies to be allowed only if the process server makes copies.

our interpretation of the statute compels the court to award the fee for copies, we note that § 52-261 (a) provides in relevant part that "[t]he following fees *shall* be allowed and paid . . . ." (Emphasis added.) "[A]lthough we have often stated [that] [d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature . . . we also have noted that the use of the word shall, though significant, *does not invariably establish a mandatory duty.* . . . Furthermore, a requirement stated in affirmative terms unaccompanied by negative words, as in the present case, generally is not viewed as mandatory." (Citations omitted; internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 744, 865 A.2d 428 (2005). "While we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous . . . our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty. . . . The test we have adopted for determining whether such a statutory requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial—to matters of convenience or of substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory. . . . A statutory provision that is directory prescribes what shall be done but does not invalidate action upon a failure to comply." (Citations omitted; internal quotation marks omitted.) *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 152–53, 561 A.2d 1373 (1989).

In light of our preceding analysis, the use of the word shall in § 52-261 is sufficiently plain and unambiguous that further analysis to determine the nature of the duty

is unnecessary. The statute provides for payment of specific fees for the service of process and, where the court has discretion in determining the amount to be paid, the court's discretion is expressed clearly in the statutory text. For example, § 52-261 (a) provides in relevant part: "[F]or summoning grand jurors, such [process server] shall receive only such [process server's] actual expenses and such *reasonable* sum for services as are taxed by the court. . . ." (Emphasis added.) Section 52-261 (a) provides in relevant part: "The following fees shall be allowed and paid . . . (5) for the removal and custody of such liquors so seized, *reasonable* expenses, and twenty dollars . . . ." (Emphasis added.) Accordingly, it is plain that the legislature intended that a process server has a right to be paid a specified fee for all pages of copies of writs and complaints served, but that the court has discretion to determine a reasonable fee for a variety of other services.

We have previously held that a trial court had abused its discretion, in the context of an equitable action, by awarding excessive process server mileage fees under § 52-261 (a). *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 29–30, 730 A.2d 1128 (1999).[15] *Danbury* is dis-

---

[15] In *Danbury*, the trial court awarded the plaintiff approximately $170,000 in sheriff's fees for the service of 111 writs and 111 lis pendens. In order to arrive at this amount, the court agreed to charge the defendant, for each of the 111 foreclosure actions, the mileage for delivery of all 111 writs and all 111 lis pendens as if each had been separately delivered. *Danbury* v. *Dana Investment Corp.*, supra, 249 Conn. 3, 10–11. Unsurprisingly, we found that awarding such costs against the defendant was an abuse of the trial court's equitable discretion. Id., 21–22. In the present matter, the plaintiff properly billed a mere $10.09 for mileage, despite delivering separate complaints on 185 defendants in one trip. Regardless of her ability to economize on travel by making a single trip to serve all defendants, it remains a fact that in order to serve all 185 defendants in the underlying matter, the plaintiff was required to handle and ensure all 185 copies of the complaint that were served were true copies. It is not unfair to observe that a process server's job is more burdensome, rather than less, when she does not personally make the copies of a complaint or writ. Accordingly, she earned her fee for each one. Although there may be a compelling policy argument that where

tinguishable because in equitable actions the court must exercise its discretion in awarding costs.[16] Not only is the present matter at law rather than in equity, but the issue is not the awarding of costs, but the calculation of them. In *Danbury*, we did not examine the court's calculation of the fee to determine whether it conformed with § 52-261. Accordingly, any reliance upon our analysis of the § 52-261 (a) mileage fee in *Danbury* for the proposition that the calculation of fees for copies under § 52-261 (a) (2) is discretionary, is misplaced.

The writ of error is granted, the judgment is reversed and the case is remanded with direction to award the plaintiff the requested fee for copies of $900.

In this opinion the other justices concurred.

multiple defendants are served through the office of the attorney general that the statutory fee charged for copies is too high, or that separate copies of complaints are not necessary, or that the fee for copies should be due only to process servers who make the copies, those arguments must be addressed to the legislature, not the courts. "[T]his court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport*, 275 Conn. 105, 161, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006).

[16] See Practice Book § 18-15.