******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEROME KINSEY *v.* WORLD PAC ET AL.
(AC 36159)

Lavine, Keller and Sullivan, Js.

*Argued April 21—officially released August 12, 2014*

(Appeal from workers' compensation review board.)

*Alan Scott Pickel*, for the appellant (petitioner).

*Colette S. Griffin*, for the appellees (respondents).

*Opinion*

SULLIVAN, J. The petitioner, Jerome Kinsey, appeals from a decision rendered by the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner (commissioner) ordering the respondents, World PAC and ACE USA, to pay past due benefits and attorney's fees. On appeal, the petitioner claims that the board erred in affirming the commissioner's conclusions that (1) attorney's fees awarded pursuant to General Statutes §§ 31-300 and 31-327 (b) cannot include paralegal fees, (2) the respondents could not be sanctioned pursuant to General Statutes § 31-288 due to insufficient notice, (3) attorney's fees should not be awarded for time expended pursuing sanctions, and (4) the commissioner's knowledge of settlement negotiations did not necessitate recusal. Because we agree with the petitioner's first claim, we reverse the board's decision in part and remand the case for further proceedings as to paralegal fees. We affirm the board's decision in all other respects.

An examination of the board's record reveals the following relevant facts. In 2000, the petitioner was injured during the course of his employment with World PAC. Since then, the petitioner has been receiving temporary total disability payments. Since 2005, the petitioner has been entitled to cost of living adjustment (COLA) payments.

On December 5, 2011, the petitioner requested an informal hearing before the commissioner for benefits, sanctions, interest, and attorney's fees, as a result of the respondent's discontinuance of payments without warning and failure to provide a series of COLA adjustments. This request was triggered by the respondents' failure to adjust his weekly benefit checks to include the necessary COLA of $7.26 since October, 2011. Also, on November 6, 2011, the petitioner had received his weekly benefit check, and then the payments had stopped for approximately four weeks. The respondents had not filed a form 36 advising the petitioner that they were discontinuing payments or that COLA would not be provided. On December 8, 2011—a date after the petitioner's request for an informal hearing before the commissioner—the petitioner received a check for the time period of November 9, 2011 to December 6, 2011. The petitioner did not receive any COLA adjustments until December 13, 2011, which was a period of seventy-three days from when they were due.

Evidence submitted before the commissioner indicated that these stoppages were not the first time that the respondents had failed to timely provide the petitioner with his benefits. For example, on June 22, 2007, the petitioner received a check for $6000 as compensation for benefits owed for the time period of October

1, 2006 through June 5, 2007. On April 2, 2008, the petitioner received a check for $1448.60 as compensation for benefits owed for the time period of February 27, 2008 through April 1, 2008.

Although all past due benefits were paid by December 13, 2011, an informal hearing before the commissioner was held on December 27, 2011, at which the respondents' counsel offered the petitioner $1000 to settle his claim for attorney's fees and sanctions. Counsel for the petitioner declined the offer and pressed for $1500. On January 5, 2012, the petitioner requested a preformal hearing for benefits, sanctions, improper discontinuance of benefits, interest, and attorney's fees. On January 18, 2012, counsel for the petitioner received a check dated January 10, 2012, in the amount of $1500. The check for $1500 did not dissuade the petitioner from his pursuit of sanctions, and on February 17, 2012, the petitioner requested a formal hearing for an "award of sanctions, interest and attorney's fees for undue delay."

A formal hearing was held before the commissioner for sanctions, interest and attorney's fees pursuant to § 31-300 on March 12, 2012. Counsel for the petitioner sought $23,118.75 in sanctions and attorney's fees, plus interest. On September 21, 2012, the commissioner, in a written decision, ordered the respondents to pay the petitioner the sum of $26.96 as and for interest on unpaid temporary total disability benefits and unpaid COLA increases, and to pay the petitioner's attorney the sum of $525 as and for a reasonable attorney's fee in connection with his preparation and attendance at the December 27, 2011 preformal hearing.

The commissioner made the following factual findings in regard to attorney's fees that are relevant to this appeal. The commissioner determined $350 an hour to be a reasonable rate due to the "facile nature of the matter . . . ." The commissioner found that the respondents failed to provide requisite notice as to their discontinuance of COLA benefits, and failed to make this adjustment for a seventy-three day period, but that the petitioner's counsel had expended no time in the pursuit of these arrearages; rather, all work performed in pursuit of the petitioner's benefits was performed by counsel's paralegal. The commissioner determined that "[t]here is no statutory authority for an award of paralegal fees or charges" and that the facts did not support compensating attorney's fees accrued subsequent to the informal hearing. The petitioner's counsel, specifically, had expended only 1.5 hours of time in preparation for the informal hearing. The commissioner determined that, accordingly, the respondents' offer at the informal hearing of $1000 to resolve the issue was reasonable to compensate counsel for his efforts, and that the demand of the petitioner's counsel of $1500 was unreasonable.

The petitioner appealed to the board from the com-

missioner's decision, pursuant to General Statutes § 31-301. On September 17, 2013, the board, in a written decision, determined that the commissioner's findings were supported by evidence in the record and were a proper exercise of her discretion. The board determined that it was not persuaded that there was any legal error. The petitioner timely appealed to this court from the board's decision, pursuant to General Statutes § 31-301b. Additional details of the findings and determinations of the commissioner and the board will be presented as necessary.

We set forth the relevant standards of review before turning to the specific claims raised by the petitioner. "A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board . . . . The board is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, 115 Conn. App. 306, 310–11, 971 A.2d 853, cert. denied, 293 Conn. 919, 979 A.2d 490 (2009).

I

The petitioner first claims that the board erred in affirming the commissioner's determination that she lacked the statutory authority to award paralegal fees. Specifically, the petitioner asserts that the commissioner may award paralegal fees pursuant to her authority to award "reasonable attorney's fees" at her discretion under §§ 31-300 and 31-327 (b). We agree with the petitioner.

The following additional facts are relevant to this claim. The board concluded that the commissioner's determination that "[t]here is no statutory authority for an award of paralegal fees or charges" was reasonable, and that her decision not to award paralegal fees was a proper exercise of her discretion. In reaching this decision, the board stated: "We find that the provisions of § 31-327 . . . make the determination of what is a reasonable legal fee within the discretion of the trial commissioner. . . . [The petitioner's] counsel cites Connecticut cases not involving [Workers' Compensation Commission (commission) matters] where judicial awards have included [paralegal fees as an] element of relief. This is unpersuasive, as none of these cases involve sanctions under [the Workers' Compensation

Act (act), General Statutes § 31-275 et seq.], and appellate precedent supports the discretion of a trial judge in determining sanctions. Moreover, the statute herein, § 31-327 . . . discusses the award of fees for 'attorneys.' While this statute does allow for fees to potentially be approved for 'other persons;' we also note that the statute utilized by the commissioner in this case, § 31-300 . . . calls for 'a reasonable attorney's fee' to be awarded when payments are unduly delayed. Our decision in *Heilweil* v. *Board of Education*, No. 5161, CRB 8-06-11 (October 24, 2007), is instructive on this issue. In *Heilweil*, we reversed the award of a witness fee to a vocational expert, as such individuals were not among those enumerated under General Statutes § 31-298 as entitled to a witness fees. We find paralegals are not among the professionals enumerated under [§§] 31-300 . . . or 31-327 . . . who may receive fees as a component of sanctions against a respondent." The board determined that, accordingly, the commissioner's decision to not compensate counsel for the time that his paralegal spent pursuing the petitioner's benefits was not reversible error.

The issue presented requires us to determine whether paralegal fees can be awarded under §§ 31-300 and 31-327 (b). "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . [W]hen . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 532, 829 A.2d 818 (2003). Neither party now contends that the board's determination of this question of law has been previously subject to judicial scrutiny, or that its interpretation of the statute is time-tested. Accordingly, we exercise plenary review over this claim. See, e.g., *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 33–34, 792 A.2d 835 (2002).

Our analysis of this claim is guided by our well established principles of statutory construction. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratex-

tual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .

"Moreover, [i]n applying these general principles, we are mindful that the [act] indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Footnote omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 784–85, 941 A.2d 932 (2008).

Our analysis begins with the language of the relevant provisions. Section 31-300 provides in relevant part: "In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in the award interest at the rate prescribed in section 37-3a and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in the award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. . . ." Also relevant to this claim is § 31-327 (b), which provides: "All fees of attorneys, physicians, podiatrists or other persons for services under this chapter shall be subject to the approval of the commissioner."

The petitioner asserts that the plain and unambiguous meaning of "reasonable attorney's fees" in § 31-300 includes fees accrued by an attorney's paralegal. The petitioner contends that the term is plain and unambiguous because, in accordance with General Statutes § 1-1 (a),[1] it is a term of art that has " 'acquired a peculiar and appropriate meaning in the law' . . . ." Specifically, the petitioner argues that "inherent in the definition" of "reasonable attorney's fee" are those fees that arise "from [the] work of nonattorneys supervised by attorneys," and here, that would encompass the work performed by the paralegal for the petitioner's counsel. We agree.

The term "reasonable attorney's fee" is not defined in the act.[2] "Although [the act] does not itself define the phrase, such silence does not necessarily equate to

ambiguity. See *Mayfield* v. *Goshen Volunteer Fire Co.*, 301 Conn. 739, 745, 22 A.3d 1251 (2011). 'The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.' . . . *Francis* v. *Fonfara*, [303 Conn. 292, 297, 33 A.3d 185 (2012)]. In the absence of express statutory guidance, we must inquire whether the phrase is a legal term of art that has 'acquired a peculiar and appropriate meaning in the law' requiring it to 'be construed and understood accordingly.' General Statutes § 1-1 (a). '[L]egal terms . . . absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . In ascertaining legislative intent [r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense.' . . . *State* v. *Dupigney*, 295 Conn. 50, 59, 988 A.2d 851 (2010)." *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012).

We agree with the petitioner that the term "reasonable attorney's fees" has acquired a judicially settled meaning that includes fees accrued by an attorney's paralegal to aid the attorney in the representation of his client. "Reasonable" is defined as "[f]air, proper, or moderate under the circumstances. Fit and appropriate to the end in view." Black's Law Dictionary (9th Ed. 2009). "Attorney fees" is defined as "[t]he charge to a client for services performed for the client . . . ." Id. Accordingly, a strict interpretation of "reasonable attorney's fee" would be a fair and moderate charge under the circumstances to a client for services performed.

Courts presume that a fair and just charge for services performed may include those fees accrued by the attorney's paralegal in the service of the client. "It has frequently been recognized . . . that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate." *Missouri* v. *Jenkins*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 109 L. Ed. 2d 31 (1989). As detailed by the United States Supreme Court in *Missouri*, when reviewing an award of attorney's fees under 42 U.S.C. § 1988 (b), which, like § 31-300, provides simply for "a reasonable attorney's fee as part of the costs": "Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. Thus, the fee must take into account the work not only of attorneys, but also of secretaries . . . and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit. The parties have suggested no reason why the work of paralegals should not be similarly compensated, nor can we think of any. We thus take as our

starting point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." Id., 285.

Our own Supreme Court extended the presumption that a reasonable attorney's fee may include the work of nonattorneys when it considered the term reasonable attorney's fee in another statute within the act. Namely, in *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 774–76, 717 A.2d 150 (1998), our Supreme Court reviewed an award of attorney's fees issued pursuant to General Statutes § 31-290a (b) (1),[3] which, as is the case with the discretion granted to the commissioner in § 31-300, directs a trial court to award "reasonable attorney's fees" to employees who prevail in civil actions for discriminatory or retaliatory discharge as a result of having filed a workers' compensation claim. In *Sorrentino*, the trial court had sua sponte departed from the terms of the fee agreement between the plaintiff and his counsel, not on the ground that it was an unreasonable agreement, but instead on the ground that "a downward modification was justified by the billing records, which described work performed by nonattorneys . . . ." *Sorrentino* v. *All Seasons Services, Inc.*, supra, 776. On appeal, our Supreme Court determined that "[i]t is not unreasonable per se for attorneys to engage and to bill clients for services rendered by nonlawyers" and, accordingly, that the trial court's departure from the terms of a reasonable fee agreement was an abuse of its discretion.[4] Id.

Here, the commissioner awarded the attorney's fees pursuant to § 31-300 and at her discretion pursuant to § 31-327. An interpretation of § 31-300 that permits paralegal fees to be included within the term "reasonable attorney's fees" is in harmony with § 31-327 (b), which grants the commissioner the discretion to award "[a]ll fees of attorneys . . . or other persons for services under this chapter . . . ."[5]

We conclude that an award of "reasonable attorney's fees" issued pursuant to §§ 31-300 and 31-327 (b) may, at the discretion of the commissioner, include fees accrued by paralegals. Accordingly, the commissioner's determination that she was without the statutory authority to award such fees was improper.

II

Second, the petitioner claims that the board erred in upholding the commissioner's conclusion that sanctions pursuant to § 31-288 could not be entered against the respondents due to lack of notice.[6] Specifically, the petitioner asserts that the respondents received proper notice. We are not persuaded.

A review of the record indicates that the petitioner requested an informal hearing for "[benefits], sanctions, improper discontinuance of [benefits], interest [and]

attorney's fees." The petitioner later requested a formal hearing for an "award of sanctions, interest and attorney's fees for undue delay." Thereafter, the hearing notice issued by the commissioner listed the issue of the formal hearing to be "[§] 31-300: Award of Interest and Attorney's Fees for Undue Delay." The commissioner issued a corrected notice on February 21, 2012, which again detailed the issue of the hearing to be "[§] 31-300—Award of Interest and Attorney's Fees for Undue Delay," but listed at the bottom that it was corrected to include "sanctions." There is no mention of § 31-288 in any of the notices.

At the center of this issue is the petitioner's failure to list explicitly on his requests for hearings that he was pursuing § 31-288 sanctions. With respect to this omission, the commissioner concluded: "[The respondents] object to any penalties being levied under the provisions of [§] 31-288 on the grounds that [the petitioner's] counsel had not raised the issue of [§ 31-288] penalties prior to the March 12, 2012 formal hearing or during the course of the formal hearing. . . . Despite [the petitioner's] request for sanctions under [§] 31-288, the preformal and formal hearing notices herein establish [that] the only issue before the commission is sanctions under [§] 31-300. No attempt was made by [the petitioner's] counsel to amend either the preformal hearing notice (sent out two weeks prior to the [February 2, 2012] hearing) or the formal hearing notice (sent out seven weeks prior to the [March 12, 2012] hearing) to include the issue of [§ 31-288] sanctions. Accordingly, the sanctions awarded herein are necessarily confined to [§] 31-300." (Citation omitted.) The board affirmed this finding, determining: "While a trial commissioner may determine that during the course of a hearing a previously unnoticed issue is suitable for adjudication . . . the commissioner is under no obligation to do so. The trial commissioner concluded that the notices and correspondence prior to the formal hearing did not reference § 31-288 . . . . We also find that unlike *Valiante* [v. *Burns Construction Co.*, No. 5393, CRB 4-08-11 (October 15, 2009)], the trial commissioner did not put the parties on notice at the opening of the formal hearing that this issue was under consideration. Therefore, we find no error from the trial commissioner['s] not awarding the claimant sanctions pursuant to § 31-288 . . . ." (Citation omitted.)

"It is fundamental in proper judicial administration that no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State*, 129 Conn. 591, 596, 30 A.2d 393 (1943). "[D]ue process [in the administrative hearing context] requires that the notice given must . . . fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. . . . [T]he fundamental reason for the requirement of notice is to advise all affected

parties of their opportunity to be heard and to be apprised of the relief sought. . . . [N]otice of a hearing is not required to contain an accurate forecast of the precise action which will be taken on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing . . . ." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 823–24, 955 A.2d 15 (2008).

"However, since [the] commission is not bound by strict pleading rules . . . a party may be apprised that a given claim is at issue by other means, such as the statements of parties at trial, the evidence they have introduced, or the papers they have filed. . . . Such flexibility is essential to an informal system that seeks to honor the requirements of due process while avoiding the presentation of cases in piecemeal fashion, where possible, and the undue prolongation of proceedings. . . . Still, freedom and flexibility need not be independent of some sort of structure. To that end, the parties involved in a formal hearing should recognize the importance of taking the time at the outset of the hearing to articulate the issues they wish to address during the proceedings. Such an eye for detail will better serve them, as confusion and uncertainty will be less likely to arise." (Citations omitted.) *Mosman* v. *Sikorsky Aircraft Corp.*, No. 4180, CRB 4-00-1 (March 1, 2001); see also 4 A. Sevarino, Connecticut Workers' Compensation After Reforms (J. Passaretti ed., 5th Ed. 2012) § 10.02, p. 1234, and § 10.19.1, pp. 1263–67.

The petitioner asserts that the board's decision is incorrect because, first, the statutory basis of the hearing is not required to be listed in the hearing notice, and second, the respondents had actual notice that he was pursuing § 31-288 sanctions and, thus, they suffered no prejudice from his failure to ensure that § 31-288 was listed on the commissioner's hearing notices. Specifically, the petitioner asserts that the commissioner's decision was a misapplication of the law, "as there is no statutory or regulatory rule asserting such a narrow, hypertechnical requirement as a prerequisite to exercising discretion as a commissioner." Further, the petitioner asserts that the respondents had actual notice that he was pursuing sanctions because: (1) his request for a formal hearing stated the issue to be an "award of sanctions, interest, and attorney's fees for undue delay," and only § 31-288 refers to the fees stemming from unduly delayed payments or other sanctionable behavior as penalties or sanctions; (2) the commissioner listed the issue of "sanctions" as a separate issue by placing it under the "special instructions" section at the bottom of the notice; (3) he announced at the beginning of the formal hearing that he was pursuing

sanctions "under all applicable statutes"; and (4) during settlement discussions, the respondents offered to pay attorney's fees in exchange for his not pursuing sanctions or additional attorney's fees. We are not persuaded.

A review of the record supports the commissioner's finding that the respondents did not receive notice that the petitioner was pursuing sanctions under § 31-288. First, a plain reading of the amended notice indicated that the issue would be sanctions pursuant to § 31-300. Second, counsel for the respondents stated at the beginning of the formal hearing that she was "unclear as to when an attorney says 'or all sanctions under the statute," and counsel for the petitioner failed to specify in response, or at any point of that hearing, that § 31-288 was the statutory foundation for the petitioner's pursuit of sanctions. Third, a review of the transcript of the formal hearing indicates that the commissioner never stated that § 31-288 sanctions were an issue to be addressed. Finally, if the respondents were aware that § 31-288 sanctions were at issue because of conversations during settlement negotiations, that is not supported by the record before this court. "Because we are required to afford great deference to the commissioner's conclusion . . . we must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence." (Internal quotation marks omitted.) *Weiss* v. *Chesebrough-Ponds USA Co.*, 51 Conn. App. 106, 110, 719 A.2d 1225 (1998). The commissioner's conclusion is sustainable by the underlying facts in this case, and we decline to disturb her conclusion.

### III

Third, the petitioner claims that the board erred in affirming the commissioner's decision to not award attorney's fees for time spent by his counsel in the pursuit of sanctions against the respondents. We are not persuaded.

The following additional facts are relevant to our disposition of this claim. The commissioner found that her "inability to award sanctions against the respondents under the provisions of § 31-288 should not be construed by the respondents as an affirmation of their conduct in this case or, for the past instances of unilateral cessation of the payment of benefits to the claimant. . . . That a pattern and practice exists in this regard makes their conduct even more offensive. Said conduct is not in compliance with either the spirit or letter of the workers' compensation law in this state. Had [§] 31-288 been duly noticed for the formal hearing, sanctions would have been levied to the fullest extent possible by the undersigned trial commissioner."

Nonetheless, the commissioner declined to award attorney's fees for counsel's futile pursuit of sanctions.

Instead, the commissioner found that compensation of attorney's fees accrued after the date of the informal hearing was unreasonable under the circumstances. Specifically, the commissioner found: "[Counsel's affidavit] shows only 1.5 hours of time invested by [the petitioner's] counsel for the period subsequent to the retirement of the debt [December 13, 2011] and the date of the first hearing thereafter [December 27, 2011]. Even at counsel's $495 hourly rate, his fee would have amounted to $742.50; with the addition of the outstanding $26.96 interest, [the petitioner's] total claim for the December 27, 2011 hearing should not have exceeded $796.46. Accordingly, the respondents' December 27, 2011 offer of $1000 to settle the dispute was beyond fair and reasonable. Counsel's insistence on payment of $1500, with full knowledge that he only had 1.5 hours invested in the case was, therefore, unreasonable. For this reason, I decline to award attorney's fees for any time invested by [the petitioner's] counsel after the December 27, 2011 informal hearing. The [act] simply does not provide any statutory authority upon which to base an award of attorney's fees for an attorney's effort to collect a fee he had not earned." The board affirmed this ruling as a proper exercise of the commissioner's discretion.

We begin by noting that the commissioner did not conclude that she lacked the statutory authority to award attorney's fees for counsel's pursuit of sanctions under §§ 31-288 or 31-300; instead, her decision was that, under the circumstances of this case, she considered such an award to be unreasonable, and exercised her discretion accordingly. The petitioner now contends that this exercise of her discretion was nonetheless legally unsound because, as asserted by the petitioner, "[t]he correct interpretation of the statutes at play, §§ 31-300 and 31-288, is that *if* a commissioner finds, in her discretion, that attorney's fees are warranted, she *must* award them based on the time spent pursuing *all* successful legal remedies, including those promulgated by the legislature for deterrence purposes. She may not arbitrarily provide a cutoff time after which no attorney's fees may be awarded without any legal or factual basis to do so." (Emphasis in original.) To support these assertions, the petitioner notes that the "principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results"; (internal quotation marks omitted) *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998); and asserts that the commissioner's findings and award, accordingly, are statutorily improper because their effect is to remove a petitioner's incentive to pursue sanctions for repeated violations, in effect nullifying §§ 31-300 and 31-288. The respondents counter the petitioner's policy concerns; specifically, the respondents assert that an award of attorney's fees under the circumstances of

this case would be "tantamount to penalizing [the defendants] for their rapid correction of all issues relating to the delayed payments" and "would likewise result in deterring employers from quickly remedying outstanding payments owed injured workers . . . as there would be no benefit to doing so."

"The decision to award attorney's fees is within the commissioner's discretion and dependent on the findings of fact." *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 323. Contrary to the petitioner's assertion, the commissioner has the discretion to award attorney's fees pursuant to § 31-327, and neither § 31-300 nor § 31-288 removes that discretion. The petitioner's appeal to policy is unavailing, as "[t]he role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) Id., 311. The petitioner has failed to establish that the commissioner's exercise of discretion was an improper application of the relevant statutes to the facts of this case; rather, the petitioner asserts that this court should remove the commissioner's discretion in all circumstances such as this, and that this court cannot do. Accordingly, the board properly affirmed the commissioner's exercise of her discretion.

IV

As his final claim, the petitioner asserts that the board erred in deciding that the commissioner was not required to recuse herself from adjudicating the formal hearing. Specifically, the petitioner asserts that, because the commissioner was aware of the contents of settlement discussions, her adjudication of the formal hearing violated due process. We are not persuaded.

The following additional facts are relevant to this claim. During the formal hearing, the parties raised the issue of settlement offers that were discussed at the informal hearing, and the commissioner admitted as evidence a letter from the petitioner's counsel to the respondents' counsel acknowledging receipt of a check for $1500. In her written decision, the commissioner noted that at the formal hearing the petitioner's counsel had questioned whether the settlement offers should have been raised as an issue in regard to the consideration of a fine under § 31-300, and that counsel had requested that a new hearing be held on this issue at which the terms of prior settlement negotiations would not be considered as evidence. The commissioner determined that counsel's "request for a new trial is unwarranted, as the matter at hand did not involve 'settlement demands and counteroffers' in connection with the resolution of the case-in-chief. . . . The [petitioner's] interlocutory request for sanctions by way of attorney's fees and interest under [§] 31-300 involved a ministerial function of the commissioner applying workers' com-

pensation statutes, reviewing the commission's file, respondents' payment history, the [petitioner's] attorney's affidavit and attached statement for services, and the [petitioner's] testimony regarding the chronology of the payment history."

The board affirmed the commissioner's decision, determining that it was not an abuse of the commissioner's discretion to admit the evidence of settlement discussions because "it was certainly relevant as to whether the respondents had offered to pay sanctions at a certain date" and that such evidence "would either support or challenge whether [the petitioner's] counsel should be compensated for work performed after that date seeking to obtain such an award." Further, the board determined that the commissioner properly did not recuse herself, because, first, "the recusal of trial commissioners has been disfavored except for circumstances under which a trial commissioner determined on his or her own that [his or her] impartiality was at issue"; (internal quotation marks omitted) *Martinez-McCord* v. *State/Judicial Branch*, No. 5647, CRB 7-11-4 (August 1, 2012); and here, the record lacked any indication that the commissioner held any bias or favoritism toward any party. Second, the board distinguished *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 96–98, 596 A.2d 374 (1991), relied upon by the petitioner for its holding that it is improper for administrative boards to consider settlement offers in their deliberations. As argued by the respondents, and agreed upon by the board, *Jutkowitz* is distinguishable from this case, as *Jutkowitz* concerned a reference to settlement negotiations by the administrative agency's counsel during his case-in-chief, whereas the present dispute is interlocutory in nature and does not impact the substantive rights of the petitioner to benefits.

The petitioner now asserts that the board's determination was incorrect, once again relying on *Jutkowitz* v. *Dept. of Health Services*, supra, 220 Conn. 96–98. Specifically, the petitioner asserts that, as in *Jutkowitz* v. *Dept. of Health Services*, supra, 97–98, where the court found that merely mentioning that a settlement offer had been made, but not specifying its terms, was improper, here, the petitioner states that "the commissioner specifically cited to and used evidence of settlement discussions in determining the award of attorney's fees . . . ." (Emphasis omitted.)

The petitioner's argument is unavailing. The "settlement" that the petitioner refers to were attempts to resolve the issue of penalties and attorney's fees, as all past due arrearages had been paid by the time of the discussions at issue. The petitioner does not challenge the board's determination that the evidence was relevant and admissible as to the issue of the amount of sanctions and attorney's fees to be awarded pursuant to § 31-300; see 1 A. Sevarino, Connecticut Workers'

Compensation After Reforms (J. Passaretti ed., 5th Ed. 2012) § 3.14.7, p. 206 ("Normally, settlement negotiations have no bearing on the merits of a claim. However, where the pending issue is whether an insurer unduly delayed the payment of benefits evidence of good faith efforts to reach a compromise may be considered relevant."), citing *Melendez* v. *Valley Metallurgical*, No. 4178, CRB 2-00-1 (May 1, 2001), appeal dismissed, AC 23921 (May 14, 2003), cert. denied, 266 Conn. 904, 832 A.2d 64 (2003); and we are not persuaded that the commissioner should nevertheless have recused herself because the petitioner has cited no evidence of bias or favoritism exhibited by the commissioner as a result of her awareness of the contents of the settlement discussions, and the record discloses none.

Furthermore, we are not persuaded that the board's unwillingness to rely on *Jutkowitz* v. *Dept. of Health Services*, supra, 220 Conn. 86, was the result of "an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 311. Accordingly, we decline to disturb the board's determination as to this claim.

The decision of the Workers' Compensation Review Board is reversed only as to the issue of an award of paralegal fees and the case is remanded to the board with direction to reverse the decision of the commissioner as to that issue only and to order further proceedings in accordance with law. The decision of the board is affirmed in all other respects.

In this opinion the other judges concurred.

[1] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

[2] The act also does not provide a definition for "attorney's fee," "attorney" or "fee."

[3] General Statutes § 31-290a (b) (1) provides in relevant part: "Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court . . . ."

[4] We further note that this court has affirmed an award of paralegal fees included in an award of "reasonable attorney's fees" under General Statutes § 42-110g (d) of the Connecticut Unfair Trade Practices Act (CUTPA). See *Jacques All Trades Corp.* v. *Brown*, 57 Conn. App. 189, 199 and n.4, 752 A.2d 1098 (2000); see also *Ulbrich* v. *Groth*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X06-CV-08-4016022-S (March 22, 2011) ("As recognized by the Supreme Court in [*Missouri* v. *Jenkins*, supra, 491 U.S. 285], separately billing for the services of a paralegal has become a widespread practice or custom in the legal community. A blanket prohibition against the recovery of paralegal services as part of an attorney fee award under CUTPA would place attorneys representing prevailing CUTPA plaintiffs in a qualitatively more limited or restrictive position than similarly situated attorneys representing plaintiffs in the marketplace. . . . [S]uch a situation is neither required by the language of CUTPA, nor consistent with the legislative purpose of the attorney fee provision."), rev'd in part on other grounds, 310 Conn. 375, 78 A.3d 76 (2013).

Also, the trial courts of Connecticut frequently include paralegal fees within their attorney's fees awards. See, e.g., *Advanced Arms Dynamics* v. *Comprehensive Prosthetic Services*, Superior Court, judicial district of New

Haven, Docket No. CV-06-5004605 S (July 6, 2011) ("[b]efore the court examines the *Johnson* [v. *Georgia Highway Express*, *Inc.*, 488 F.2d 714 (5th Cir. 1974)] factors it should also note that it seems to have always been assumed that staff such as paralegals assisting counsel are part of the total cost of litigation which can be charged against a defendant and to which the *Johnson* test applies"); *Machado* v. *Hartford*, Superior Court, judicial district of Hartford, Docket No. CV-07-4028971 (August 5, 2009) (including paralegal fees and copier expenses in its attorney's fees award).

[5] Furthermore, an interpretation that bars compensation for paralegals raises serious policy concerns, because it requires attorneys to perform the paralegal's work at a much higher rate, or to bill the paralegal's work at their own higher rate. See *Missouri* v. *Jenkins*, supra, 491 U.S. 288 n.10. An interpretation of "reasonable attorney's fees" that fosters such behavior is inapposite to "[t]he humanitarian and remedial purposes of the [act, which] counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Vincent* v. *New Haven*, supra, 285 Conn. 785. Accordingly, an interpretation of "reasonable attorney's fees" that excludes fees accrued by paralegals in the service of the claimant is absurd and unreasonable. See General Statutes § 1-2z. Nonetheless, "[a]lthough we recognize that the humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation . . . we are not free to accomplish a result that is contrary to the intent of the legislature as expressed in the act's plain language." (Citation omitted; internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors*, *Inc.*, 248 Conn. 793, 807, 730 A.2d 1149 (1999). The plain language of the act, however, does not bar the compensation of paralegals that accrue fees in the service of the attorney for the claimant.

[6] General Statutes § 31-288 (b) (1) provides in relevant part: "Whenever through the fault or neglect of an employer or an insurer, the adjustment or payment of compensation due under this chapter is unduly delayed, such employer or insurer may be assessed by the commissioner hearing the claim a civil penalty of not more than one thousand dollars for each case of delay, to be paid to the claimant. . . ."