MIREILLE DESROSIERS *v.* DIAGEO NORTH
AMERICA, INC., ET AL.
(AC 33235)

DiPentima, C. J., and Robinson and Mihalakos, Js.

---

Argued April 25—officially released August 14, 2012

*John T. Bochanis*, for the appellant (plaintiff).

*Kenneth W. Gage*, for the appellee (named defendant).

*Michael J. Soltis* and *Akintokunbo Akinbajo* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Todd D. Steigman* and *Justin E. Theriault* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Charles Krich*, principal attorney, filed a brief for the commission on human rights and opportunities as amicus curiae.

*Opinion*

ROBINSON, J. The plaintiff, Mireille Desrosiers, appeals from the partial summary judgment[1] rendered by the trial court in favor of the defendants Diageo

---

[1] Summary judgment was rendered on all but one count of the plaintiff's amended complaint. Nevertheless, a trial on the remaining count was held and judgment was rendered in favor of the defendants prior to the filing of the present appeal.

North America, Inc. (Diageo), and Lawrence D. Levine.[2] On appeal, the plaintiff claims that the court erred in granting in part the defendants' motion for summary judgment (1) on the claim alleging discrimination based on a perceived disability because it improperly determined that a claim for discrimination based on a perceived disability does not exist in Connecticut, (2) on the claim for negligent misrepresentation because material questions of fact exist as to whether the defendants made negligent misrepresentations to her and (3) on the claim of promissory estoppel because material questions of fact exist as to whether the doctrine of promissory estoppel should have precluded the defendants from terminating the plaintiff's employment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's claims. Diageo is a producer of alcoholic beers, wines and spirits. The plaintiff began working for Diageo in 1993. When Diageo merged with another alcoholic beverages company in 2001, the plaintiff's position was eliminated, however, Levine allowed the plaintiff to serve in the position of a value added packaging buyer.[3]

Diageo had a formal performance evaluation program in place in which an employee could receive a ranking of below expectations, satisfactory, fully meets expectations or exceeds expectations. In February, 2004, the plaintiff was rated as satisfactory. In April, 2004, the plaintiff was still struggling in the new position; therefore, Levine drafted a document entitled "Mireille's Key

---

[2] The plaintiff named Colleen Ooten as an additional defendant. The trial court concluded that neither the original nor amended complaints contained any allegations of conduct by Ooten for which she may be individually liable, and, therefore, Ooten was a defendant in name only. The court's conclusion as to Ooten was not appealed by the plaintiff. Therefore, for the purposes of this appeal, we refer to Diageo and Levine as the defendants.

[3] The defendants described this position as "the practice of repackaging [Diageo's] products for holidays, special occasions, or other promotions."

Criteria and Deliverables," which listed five areas where the plaintiff needed to improve. In the August, 2004 evaluation, Levine rated the plaintiff's performance as below expectations. In September, 2004, the plaintiff was evaluated and informed that certain aspects of her job performance were still inadequate as she had only met two of her five goals. The plaintiff thereafter was placed in a ninety day performance improvement plan prepared for her by Levine. On November 17, 2004, the plaintiff met with Levine to talk about her progress. According to the plaintiff's affidavit, Levine informed her that her progress was satisfactory, she was no longer in need of the performance improvement plan and she no longer had to worry about the criteria stated in the document delivered to her in September, 2004.

The plaintiff took vacation time from December 21, 2004 through January 4, 2005. When the plaintiff returned to work on January 4, 2005, she informed Levine that she would need to take time off from work to undergo surgery for a tumor on her right shoulder. On January 5, 2005, Levine informed the plaintiff that her employment was terminated. The defendants' stated reason for terminating her employment was that her performance had not sufficiently improved.

The plaintiff's amended complaint sets forth five counts against the defendants. The first three counts alleged disparate treatment discrimination under General Statutes § 46a-51 et seq.[4] The third count of the complaint alleged that the plaintiff was discriminated against on the basis of her physical disability and/or her perceived disability. The fourth and fifth counts of the complaint alleged negligent misrepresentation and promissory estoppel, respectively.

---

[4] The first count alleged that the plaintiff was discriminated against on the basis of her race, color and national origin. The second count alleged that the plaintiff was discriminated against on the basis of her age.

On May 3, 2010, the defendants filed a motion for summary judgment. On September 9, 2009, the court granted the defendants' motion for summary judgment on counts one, two, four and five. As to count three, the court granted the defendants' motion for summary judgment to the extent that it alleged a cause of action based on a perceived disability, but denied the motion as to the allegation of discrimination based on a physical disability. In its memorandum of decision on the defendants' motion for summary judgment, the court expressly determined that "a cause of action based on a perceived disability is not a legally recognized action in Connecticut." A jury trial was held on the remainder of count three, resulting in a verdict in favor of the defendants. This appeal followed. Additional facts will be set forth where necessary.

Our standard of review for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [the defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010).

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues

but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 464–65, 976 A.2d 23 (2009).

I

The plaintiff's first claim on appeal is that the court erred in granting the defendants' motion for summary judgment in part on count three when it concluded that a claim for discrimination based on a perceived physical disability does not exist in Connecticut. The plaintiff argues that a claim for discrimination based on a perceived disability exists under General Statutes § 46a-60 (a). We disagree.

Generally, when confronted with an issue of statutory interpretation we look to General Statutes § 1-2z to guide our analysis. *Francis* v. *Fonfara*, 303 Conn. 292, 297, 33 A.3d 185 (2012). The plaintiff, however, cites *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 403, 944 A.2d 925 (2008), in which our Supreme Court, in determining whether § 46a-60 (a) (1) imposes on employers the duty to provide reasonable accommodations to disabled employees, determined that its analysis was not limited by § 1-2z. The court in *Curry* noted that "[w]hen . . . a statutory provision is silent with respect to [the issue at hand], our analysis is not limited by . . . § 1-2z, which provides that the meaning of statutes shall be ascertained from only their text and their relationship to other statutes if those sources reveal an

unambiguous meaning that is not absurd or unworkable. . . . In addition to the words of the statute itself, we look to . . . the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) Id., 407. Because § 46a-60 was silent with respect to reasonable accommodations, the court in *Curry* looked to the legislative history and circumstances surrounding its enactment in reaching its decision. Id., 408.

In the present case, the plaintiff claims that she was discriminated against on the basis of a perceived disability in violation of § 46a-60. Section 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness . . . ." The plaintiff urges this court to follow *Curry* and to look at the pertinent legislative history in determining whether § 46a-60 provides protection for those who are regarded as physically disabled, because § 46a-60 is silent with respect to that issue. Although § 46a-60 does not reference the phrase "regarded as," we must also look to the definitions of the statute's relevant terms found in

§ 46a-51. Section 46a-51 (15)[5] defines the term "physically disabled" and the definition is silent as to whether it covers those who are regarded as disabled by their employer. At the same time, however, § 46a-51 (20),[6] which defines "mental disability," does in fact use the phrase "regarded as" in its definition. The present case, therefore, is distinguishable from *Curry*, where the phrase "reasonable accommodations" was entirely absent from the relevant statutory scheme. In the present case, the legislature chose to use the phrase "regarded as" in its definition of "mental disability," and that definition is found in the same section as the definition of "physically disabled." As a result, we cannot say that the statutory provision is silent with respect to the issue at hand as it was in *Curry*. We therefore look to § 1-2z to guide our analysis.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous

[5] General Statutes § 46a-51 (15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device . . . ."

[6] General Statutes § 46a-51 (20) defines "mental disability" as "an individual who has a record of, *or is regarded as* having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders' . . . ." (Emphasis added.)

and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Francis* v. *Fonfara*, supra, 303 Conn. 297.

We begin our review with the text of the relevant statutory provisions. As previously stated, in order to properly interpret § 46a-60, we must look to the definition of "physically disabled" found in § 46a-51 (15). Section 46a-51 (15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device . . . ."

Physically disabled is therefore defined under the provision as any individual who *has* any chronic physical handicap, infirmity or impairment. There is no language in the provision that supports an interpretation that it includes those who may be regarded as disabled by their employers. Rather, the use of the word "has" by the legislature evinces the intent to protect those who actually suffer from some type of handicap, infirmity or impairment, not those whose employer may incorrectly regard as being disabled. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Francis* v. *Fonfara*, supra, 303 Conn. 297. When reading the statutory language at issue, § 46a-51 (15) is not susceptible to more than one reasonable interpretation.

Rather, the language clearly demonstrates that it protects those who are physically disabled, and no language is used to support an interpretation that it also protects those who are regarded as physically disabled.[7]

Furthermore, to conclude that the language used in § 46a-51 (15) allows for an interpretation that § 46a-60 protects those who are regarded as physically disabled, would render the language used in § 46a-51 (20) superfluous. It is a "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Put differently, [t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Citation omitted; internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 849–50, 937 A.2d 39 (2008). The legislature explicitly chose to include the phrase "regarded as" in its definition of mental disability. To conclude that the language of § 46a-51 (15) allows for § 46a-60 to provide protection for those who are regarded as physically disabled by their employers

---

[7] We note that the plaintiff has proffered numerous policy reasons to support her argument that § 46a-60 should be interpreted to protect those who are regarded as physically disabled by their employers. We consistently have held, however, that "the task of changing the law lies with the legislature, and not with the judiciary. In construing a statute, the cardinal principle of construction is to ascertain the intent of the legislature. If an act passed by the legislature is within its constitutional power, it is not the business of the court to attempt to twist the interpretation of the law to conform to the ideas of the judges as to what the law ought to be or to attempt to make the law coincide with their ideas of social justice. The judicial function should not invade the province of the legislature." (Internal quotation marks omitted.) *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission*, 293 Conn. 164, 182, 977 A.2d 148 (2009).

would cause the phrase in § 46a-51 (20) to have no meaning. After examination of the definition of "physically disabled," we conclude that the text of § 46a-60 is clear and unambiguous in that it does not cover claims of discrimination based on a perceived physical disability. We therefore conclude that the court did not err in granting the defendants' motion for summary judgment on the plaintiff's claim of discrimination based on a perceived disability.

## II

The plaintiff's next claim on appeal is that the court erred in granting the defendants' motion for summary judgment on count four of her complaint, which alleged negligent misrepresentation. She argues that sufficient questions of material fact exist as to whether the defendants made negligent misrepresentations to her. We disagree.

The following additional facts are necessary for resolution of the plaintiff's claim. In her amended complaint, the plaintiff alleged that the defendants "represented to the [p]laintiff that she satisfactorily completed her probationary period in her . . . position and was satisfactorily performing her work for the [d]efendants . . . and as a result the [d]efendants represented that they would continue to employ the [p]laintiff in the . . . position." The defendants do not dispute the plaintiff's statement in her affidavit that "on November 17, 2004 at a meeting held with my manager, Lawrence D. Levine, I was told my progress was satisfactory, I was no longer in need of the performance improvement plan, and I no longer had to worry about the criteria stated in the memo delivered to me on September 15, 2004." According to Levine's affidavit, by December 1, 2004, however, he concluded that the plaintiff's performance had not sufficiently improved.

In its memorandum of decision, the court first noted that the plaintiff was an at-will employee. The court concluded that before determining whether there exists a genuine issue of material fact as to whether Levine knew or should have known that the statement he made to the plaintiff was false, the issue was whether the plaintiff, as an at-will employee, could have justifiably relied on Levine's statement. The court concluded that "Levine did not make to the plaintiff any guarantee of employment or otherwise alter her status as an at-will employee." Therefore, the court determined that Levine's statement did not constitute negligent misrepresentation and granted summary judgment on that count.

"Our Supreme Court has long recognized liability for negligent misrepresentation. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 52, 19 A.3d 215 (2011). A plaintiff is also required to show that he reasonably relied on the misrepresentation. Id.

The plaintiff contends that she relied on Levine's representation that she was performing her work in a satisfactory manner to her detriment and remained employed with Diageo with the expectation that she would not be discharged for any performance issues. The defendants contend that the record demonstrates that the plaintiff did not reasonably or detrimentally

rely on the statement made by Levine. We agree with the defendants.

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002). In reaching its conclusion that Levine's statement did not constitute negligent misrepresentation, the trial court relied upon *Petitte* v. *DSL.net, Inc.*, 102 Conn. App. 363, 952 A.2d 457 (2007). We also find that case instructive.

In *Petitte*, the plaintiff alleged that a letter from the defendant offering him a position constituted negligent misrepresentation when the defendant had not yet consulted with the plaintiff's references. Id., 372. The defendant rescinded its offer three days later on the basis of the information received from the plaintiff's references. Id., 366. On appeal, this court determined that the employment offer did not constitute negligent misrepresentation because the offer did not guarantee employment and it explicitly stated that the employment was at will, and therefore "the plaintiff's reliance on the letter as a guarantee of employment was not justifiable as a matter of law." Id., 373. This court stated: "As noted by the [trial] court, 'the offer letter was fraught with risk because [the defendant] reserved unfettered discretion to end the employment relationship at any time.' " Id. This court therefore affirmed the trial court's rendering of summary judgment as to the plaintiff's negligent misrepresentation claim. Id.

Although Levine indicated that the plaintiff's performance may no longer have been in need of improvement, his statement did not alter the fact that the

plaintiff was an employee at will. Levine's statement did not change the terms of the plaintiff's employment; she still could be terminated for any reason or no reason at any time. As in *Petitte,* although the plaintiff may have been encouraged by Levine's statement that her work was now satisfactory, her reliance on the statement was not justifiable when Diageo still reserved the "unfettered discretion to end the employment relationship at any time." (Internal quotation marks omitted.) Id. We therefore conclude that summary judgment was properly rendered as to the plaintiff's negligent misrepresentation claim.

### III

The plaintiff's last claim on appeal is that the court erred in granting the defendants' motion for summary judgment on her promissory estoppel claim. She contends that material questions of fact exist as to whether the doctrine of promissory estoppel should have precluded the defendants from terminating her employment. We disagree.

The plaintiff's claim of promissory estoppel stems from the same statement she relied on for her negligent misrepresentation claim, namely, Levine's statement to her that her progress was satisfactory and that she was no longer in need of the performance improvement plan. In its memorandum of decision, the court concluded that even if Levine's statement was considered a clear and definite promise, Levine would have had no objective reason to expect the plaintiff to rely on it. The court thereafter granted the defendants' motion for summary judgment on that count.

"Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . [Our Supreme Court] has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind

a promisor. . . . Section 90 of the Restatement [(Second) of Contracts] states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Internal quotation marks omitted.) *Saye* v. *Howe*, 92 Conn. App. 638, 647–48, 886 A.2d 1239 (2005).

The plaintiff argues that Levine's statement constituted a promise that her employment would be secure and that there were no longer any performance issues with her work. The plaintiff relies on *Stewart* v. *Cendant Mobility Services Corp.*, 267 Conn. 96, 837 A.2d 736 (2003), to support her argument that the representation in the present case was clear and definite and constituted a promise on which she reasonably could have relied. In *Stewart*, the plaintiff asked her defendant employer whether it would affect her employment if her husband secured employment with a competing firm. Id., 103. The defendant apprised her that it had no concerns about her husband working for a competing firm and assured her that she was a highly valued employee. Id. After her husband began working for a competing firm, the defendant reduced the plaintiff's duties and ultimately terminated her employment. Id., 100. On appeal, our Supreme Court determined that there was sufficient evidence to constitute a claim for promissory estoppel. Id., 106. The court determined that the defendant's representations were sufficiently

clear and definite to constitute a promise that her employment would not be affected adversely by her husband's employment with a competitor. Id. The court further determined that the plaintiff detrimentally relied upon the defendant's representations when she chose to remain employed with the defendant despite other available employment opportunities where she could have received a signing bonus of approximately $812,700. Id., 112.

The plaintiff argues that in the present case, like in *Stewart*, Levine's representation constituted a promise on which the plaintiff reasonably could have relied. The plaintiff's reliance on *Stewart*, however, is misplaced. In *Stewart*, the plaintiff went to her employer with a specific issue and was reassured that this issue would not affect her employment. In the present case, the plaintiff had continuously been performing at an unsatisfactory level and was taken off of the performance improvement plan by Levine when her work was satisfactory. Unlike in *Stewart*, there was no express promise made to the plaintiff that her future employment with Diageo was secure.

Furthermore, the statement was not one which Levine reasonably would have expected the plaintiff to rely on. After numerous performance issues, Levine apprised the plaintiff that her work was satisfactory and she no longer needed to be on the performance improvement plan. A reasonable person in Levine's position would not expect that this statement would cause the plaintiff to rely on it as a promise of secured employment with Diageo. The plaintiff was an employee at will, and nothing in Levine's statement was indicative of a promise of future employment. We therefore conclude that summary judgment was properly rendered as to the plaintiff's promissory estoppel claim.

The judgment is affirmed.

In this opinion the other judges concurred.