******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MIREILLE DESROSIERS *v.* DIAGEO NORTH
AMERICA, INC., ET AL.
(SC 19039)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa and Vertefeuille, Js.

*Argued January 15—officially released December 16, 2014*

*John T. Bochanis*, for the appellant (plaintiff).

*Kenneth W. Gage*, with whom, on the brief, was *Erin E. LaRuffa*, for the appellee (named defendant).

*Charles Krich*, principal attorney, filed a brief for the Commission on Human Rights and Opportunities as amicus curiae.

*Michael J. Soltis* and *Justin E. Theriault* filed a brief for the Connecticut Business Industry Association, Inc., as amicus curiae.

*Opinion*

ESPINOSA, J. Under the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq., employers may not discriminate against certain protected classes of individuals, including those who are physically disabled. The sole issue in this appeal is whether the act also prohibits employers from discriminating against individuals whom they perceive to be physically disabled. The plaintiff, Mireille Desrosiers, claims that the Appellate Court improperly affirmed the trial court's partial summary judgment rendered in favor of the defendants Diageo North America, Inc. (Diageo), and Lawrence D. Levine,[1] her employer and manager, respectively, on the ground that " 'a cause of action based on a perceived [physical] disability is not a legally recognized action in Connecticut.' " *Desrosiers* v. *Diageo North America, Inc.*, 137 Conn. App. 446, 451, 49 A.3d 233 (2012). The plaintiff contends that although the express terms of General Statutes § 46a-60 (a) (1)[2] protect only individuals who have a physical disability, the legislative history of the act, considered in conjunction with Connecticut case law and the interpretation of the act by the Commission on Human Rights and Opportunities (commission), compels the conclusion that § 46a-60 (a) (1) also protects individuals who are regarded by their employers as having a physical disability. We agree with the plaintiff and reverse in part the judgment of the Appellate Court.

The relevant facts and procedural history are set forth in the Appellate Court's opinion. "Diageo is a producer of alcoholic beers, wines and spirits. The plaintiff began working for Diageo in 1993. [After] Diageo merged with another alcoholic beverages company . . . the plaintiff's position was eliminated, however, Levine allowed the plaintiff to serve in the position of a value added packaging buyer.[3]

"Diageo had a formal performance evaluation program in place in which an employee could receive a ranking of below expectations, satisfactory, fully meets expectations or exceeds expectations. In February, 2004, the plaintiff was rated as satisfactory. In April, 2004, the plaintiff was still struggling in the new position; therefore, Levine drafted a document entitled 'Mireille's Key Criteria and Deliverables,' which listed five areas where the plaintiff needed to improve. In the August, 2004 evaluation, Levine rated the plaintiff's performance as below expectations. In September, 2004, the plaintiff was evaluated and informed that certain aspects of her job performance were still inadequate as she had only met two of her five goals. The plaintiff thereafter was placed in a ninety day performance improvement plan prepared for her by Levine. On November 17, 2004, the plaintiff met with Levine to talk about her progress. According to the plaintiff's affidavit, Levine informed her that her progress was satisfactory,

she was no longer in need of the performance improvement plan and she no longer had to worry about the criteria stated in the document delivered to her in September, 2004.

"The plaintiff took vacation time from December 21, 2004 through January 4, 2005. When the plaintiff returned to work on January 4, 2005, she informed Levine that she would need to take time off from work to undergo surgery for a tumor on her right shoulder. On January 5, 2005, Levine informed the plaintiff that her employment was terminated. The defendants' stated reason for terminating her employment was that her performance had not sufficiently improved.

"The plaintiff's amended complaint sets forth five counts against the defendants. The first three counts alleged disparate treatment discrimination under [§ 46a-60].[4] The third count of the complaint alleged that the plaintiff was discriminated against on the basis of her physical disability and/or her perceived disability. The fourth and fifth counts of the complaint alleged negligent misrepresentation and promissory estoppel, respectively.

"On May 3, 2010, the defendants filed a motion for summary judgment . . . [and] the court granted the defendants' motion for summary judgment on counts one, two, four and five. As to count three, the court granted the defendants' motion for summary judgment to the extent that it alleged a cause of action based on a perceived physical disability, but denied the motion as to the allegation of discrimination based on a physical disability. In its memorandum of decision on the defendants' motion for summary judgment, the court expressly determined that 'a cause of action based on a perceived disability is not a legally recognized action in Connecticut.' A jury trial was held on the remainder of count three, resulting in a verdict in favor of the defendants." (Footnotes in original.) Id., 449–51.

The plaintiff appealed to the Appellate Court, claiming that the trial court improperly had rendered summary judgment in part on count three of the amended complaint on the basis of its improper conclusion that Connecticut does not recognize a cause of action for discrimination on the basis of a perceived physical disability.[5] Id., 452. In order to assess whether individuals who are perceived to be physically disabled are protected by the act, and may therefore bring a claim alleging employment discrimination, the Appellate Court considered the text of § 46a-60 (a) (1), which prohibits an employer from discriminating against an individual on the basis of that individual's physical disability. After determining that § 46a-60 (a) (1) is silent as to whether it prohibits an employer from discriminating against an individual who is regarded as having a physical disability; id., 453; the Appellate Court examined the definitions of " '[p]hysically disabled' " and " '[m]ental

disability' " in General Statutes § 46a-51 (15) and (20), respectively.[6] The court noted that whereas the definition of " '[p]hysically disabled' " only includes "any individual who *has* any chronic physical handicap, infirmity or impairment"; (emphasis added) General Statutes § 46a-51 (15); the definition of " '[m]ental disability' " also includes individuals who are "regarded as having one or more mental disorders . . . ." General Statutes § 46a-51 (20); *Desrosiers* v. *Diageo North America, Inc.*, supra, 137 Conn. App. 454–55. Emphasizing that "the use of the word 'has' by the legislature [in § 46a-51 (15)] evinces the intent to protect those who actually suffer from some type of handicap, infirmity or impairment, not those whose employer may incorrectly regard as being disabled"; *Desrosiers* v. *Diageo North America, Inc.*, supra, 455; the Appellate Court determined that "the language clearly demonstrates that it protects those who are physically disabled, and no language is used to support an interpretation that it also protects those who are regarded as physically disabled." Id., 456. As a result, the Appellate Court concluded that "the text of § 46a-60 is clear and unambiguous in that it does not cover claims of discrimination based on a perceived physical disability," and rejected the plaintiff's claim that the trial court improperly had granted the defendants' motion for summary judgment as to the count alleging discrimination on the basis of a perceived physical disability. Id., 457. We then granted the plaintiff's petition for certification to appeal to this court on the sole issue of whether "the Appellate Court properly affirm[ed] the trial court's granting of summary judgment in favor of the defendant[s] on the basis that Connecticut does not recognize a cause of action for discrimination based on a perceived physical disability." *Desrosiers* v. *Diageo North America, Inc.*, 307 Conn. 916, 54 A.3d 180 (2012).

In her appeal to this court, the plaintiff claims that the Appellate Court improperly affirmed the judgment of the trial court on the basis of its determination that § 46a-60 (a) (1) only protects individuals who are physically disabled from employment discrimination. The plaintiff contends that because § 46a-60 (a) (1) is silent as to whether it also protects individuals who are regarded as physically disabled, the Appellate Court should have considered the legislative history of the act and the decisions of the commission in construing the statute. According to the plaintiff, these sources compel the conclusion that § 46a-60 (a) (1) protects individuals who are regarded as physically disabled from employment discrimination. The plaintiff further argues that even if the text of § 46a-60 (a) (1) is plain and unambiguous, an interpretation that § 46a-60 (a) (1) protects individuals who are physically disabled from employment discrimination but does not protect individuals who are regarded as physically disabled from employment discrimination, would yield absurd

results. Diageo counters that the clear and unambiguous terms of § 46a-60 (a) (1) do not provide a cause of action for discrimination premised on perceived physical disabilities because individuals who are perceived to be physically disabled are not within the protected class of physically disabled individuals, and that even if the language were ambiguous, the trial court's ruling is consistent with the legislative history of the act. As an alternative ground for affirmance, Diageo claims that the pleadings, affidavits and other proof submitted by the plaintiff were insufficient to establish an issue of material fact with respect to whether the defendants regarded the plaintiff as physically disabled. We conclude that § 46a-60 (a) (1) protects individuals who are perceived to be physically disabled from employment discrimination and reject Diageo's alternative ground for affirming the judgment of the Appellate Court. Accordingly, we reverse in part the judgment of the Appellate Court.

The standard of review for a trial court's ruling on a motion for summary judgment is well established. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 313, 87 A.3d 546 (2014). In the present case, the trial court granted in part the motion for summary judgment on count three of the amended complaint solely on the basis of its legal determination that Connecticut does not recognize a cause of action for discrimination premised on a perceived physical disability. In other words, while individuals who have a physical disability are a protected class under the statute, individuals who are perceived to have a physical disability do not fall within this group and are not protected by the statute. Because this legal determination raises an issue of statutory construction, we engage in plenary review. *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 620, 72 A.3d 394 (2013).

When presented with a question of statutory construction, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is

plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z." (Internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 309 Conn. 412, 421–22, 72 A.3d 13 (2013). When a statute is not plain and unambiguous or would yield absurd or unworkable results, however, "we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 422. Finally, when it becomes necessary to consult additional sources, "[w]e traditionally have accorded deference to the time-tested interpretation of an agency charged with enforcing the provisions of a statute, provided that the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable." (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 404, 944 A.2d 925 (2008). As this court recently affirmed, "[d]eference is warranted in such circumstances because a time-tested interpretation, like judicial review, provides an opportunity for aggrieved parties to contest that interpretation. Moreover, in certain circumstances, the legislature's failure to make changes to a long-standing agency interpretation implies its acquiescence to the agency's construction of the statute. . . . For these reasons, this court long has adhered to the principle that when a governmental agency's time-tested interpretation [of a statute] is reasonable it should be accorded great weight by the courts." (Internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 422–23.

In order to determine whether the legislature intended to protect individuals who are regarded as physically disabled from employment discrimination, we look first to the text of § 46a-60, which provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section: (1) For an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness . . . ."

Although § 46a-60 (a) (1) is silent as to whether its protections extend to individuals who are regarded as

physically disabled, the definitions of " '[p]hysically disabled' " in § 46a-51 (15) and " '[m]ental disability' " in § 46a-51 (20), are instructive. See General Statutes § 1-2z (statutory analysis begins with text of statute and relationship to other statutes); *Manifold* v. *Ragaglia*, supra, 272 Conn. 419 (turning to text of related statutory provisions to ascertain legislative intent when primary statute at issue was silent). The fact that " '[m]ental disability' " is defined to include "an individual who has a record of, or is regarded as having one or more mental disorders"; General Statutes § 46a-51 (20); whereas " '[p]hysically disabled' " is defined to include only "any individual who has any chronic physical handicap, infirmity or impairment"; General Statutes § 46a-51 (15); indicates that individuals who are regarded as physically disabled are not protected by the act. As a result, upon considering the text of § 46a-60 (a) (1) and the related provisions of § 46a-51 (15) and (20), we agree with the Appellate Court's conclusion that "the text of § 46a-60 is clear and unambiguous in that it does not cover claims of discrimination based on a perceived physical disability." *Desrosiers* v. *Diageo North America, Inc.*, supra, 137 Conn. App. 457.

Although we agree with the Appellate Court's determination that the plain text of § 46a-60 (a) (1) does not protect individuals who are perceived to be physically disabled from employment discrimination, our analysis does not end here. The plaintiff contends that even if the text of § 46a-60 (a) (1) is plain and unambiguous, this court must consult other sources to ascertain the legislature's intent because "[a]n interpretation that [the act] excludes perceived disabilities would yield absurd results, and the legislative history supports the conclusion that Connecticut lawmakers intended [the act] to cover individuals with perceived disabilities." See General Statutes § 1-2z (meaning of statutes shall be ascertained from text and relationship to other statutes only if those sources reveal unambiguous meaning that is not absurd or unworkable); *Blasko* v. *Commissioner of Revenue Services*, 98 Conn. App. 439, 455, 910 A.2d 219 (2006) (turning to extratextual evidence to determine meaning of statute when plain and unambiguous language would lead to absurd or unworkable result); see also *Raftopol* v. *Ramey*, 299 Conn. 681, 703–705, 12 A.3d 783 (2011) (turning to extratextual evidence to determine meaning of statute when language was ambiguous and proposed interpretation would lead to bizarre result).

Here, although the language of § 46a-60 (a) (1) is plain and unambiguous, a literal application of the statutory language would lead to a bizarre result. Namely, under the plain language of § 46a-60 (a) (1), if an employee has a chronic disease, the employer may not discharge the employee on that basis. If, however, the employee is undergoing testing that leads his employer to believe that he has a chronic disease, the literal terms of § 46a-

60 (a) (1) do not protect the employee from discharge on that basis, despite the fact that the employer's action, in both cases, was premised on the same discriminatory purpose. Similarly, under Diageo's interpretation of § 46a-60 (a) (1), an employee who is discharged because his employer believes a rumor that he has a chronic impairment can pursue a cause of action, but only if the rumor is true and the employee actually *has* the chronic impairment. If the rumor is false, and the employee does not have the impairment, but is merely believed to have the impairment, the employee has no recourse, despite the fact that in either case the employer's action was based on the same discriminatory motive. That scenario is contrary to the very idea of an antidiscrimination statute and is inconsistent with the legislature's clear statement "that discrimination based on a physical disability is prohibited." *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 224, 676 A.2d 844 (1996). Because a literal interpretation of § 46a-60 (a) (1) would lead to a bizarre result, we must examine other sources, including the legislative history of the act, case law and the decisions of the commission. After careful review of these sources, we conclude that § 46a-60 (a) (1) prohibits employers from discriminating against individuals who are perceived to be physically disabled.

We start with the legislative history of the act, which incorporated provisions to protect physically disabled individuals from employment discrimination in 1973. Public Acts 1973, No. 73-279, § 14 (P.A. 73-279). Although this court has not considered the history of the act with respect to the definition of physically disabled, this court examined the history of the act in order to determine whether § 46a-60 requires employers to provide reasonable accommodations to disabled employees and found that "the legislative history reveals a consistent intent to increase protections for individuals with disabilities." *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 412. Recognizing that "the intent of the legislature [was] to stamp out discrimination on the basis of physical disability and a wide range of other disabilities (mental disability, learning disability, and mental retardation)"; id., 412; we concluded that § 46a-60 requires employers to provide reasonable accommodations to disabled employees. Id., 415.

With respect to the precise issue of whether the act protects individuals who are perceived to be physically disabled, the legislative history indicates that the legislature, consistent with its broad intent to stamp out discrimination, worked to craft a definition of physically disabled that would be specific enough to indicate who was protected by the law, but not so specific as to exclude individuals who were not enumerated. When the legislature enacted P.A. 73-279 to "encourage and enable the blind and otherwise physically disabled to

participate fully in a social and economic life of the [s]tate and to engage in remunerative employment," it did not define physically disabled. 16 S. Proc., Pt. 5, 1973 Sess., p. 2299, remarks of Senator Louise S. Berry. The following year, when the legislature defined the term; see Public Acts 1974, No. 74-346 (P.A. 74-346); Representative Jean T. Thornton explained that the legislature "did not define . . . physically disabled [in 1973] because we could see there was just no way to do it and we wanted to cover as many people as possible under the definition and leave it open and broad. It was intended to cover any medical condition that would prohibit a person from being discriminated against, in other words, that didn't sound very correct, what I mean is you could not discriminate against someone if they were physically disabled or had a medical problem of any sort in employment. And you can see why we did not define it last year. It's because of all the questions that have come up today. We cannot have a whole catalogue of every medical ailment in our statutes." 17 H.R. Proc., Pt. 11, 1974 Sess., pp. 5130–31.

The history of P.A. 74-346 documents the legislature's determination to define physically disabled[7] in a manner that would not exclude certain groups of individuals. Before the Senate and the House of Representatives voted to adopt P.A. 74-346, both chambers amended the proposed language, which enumerated categories of individuals who would be considered physically disabled, in order to "avoid the pitfall of specificity" and to ensure that groups of individuals would not be excluded on the ground that they had not been listed. Id., p. 5089, remarks of Representative James J. Kennelly; see also id., p. 5088, remarks of Representative Thomas M. Kablik ("[i]t would not be a punch list or an enumeration list which then someone could argue included all of those that were covered by this bill"). Representative James Clynes, seeking clarification of the amendment, remarked that "it seems to me that we have encompassed pretty nearly every type of physical disability. . . . As I understand the amendment, the reason we're changing it is in fear that we have not included everyone." Id., p. 5125. In 1975, however, the legislature found it necessary to make the definition of physically disabled more specific and enacted the current definition. See Public Acts 1975, No. 75-346 (P.A. 75-346).[8] The amendment was necessary because the legislature had set aside certain housing and had authorized the use of handicapped license plates and required "some means to provide the services for those that need it. . . . [T]he key to the amendment is the fact that it does spell out and define very clearly, we think, the people that will be entitled to the use of the housing and the license plates." 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3578, remarks of Representative Charles Matties. In sum, the history of the act details the legislature's efforts to balance its determination to be as broad

and inclusive as possible with the need for sufficient specificity to permit enforcement.

In keeping with this broad legislative intent, the commission, for more than twenty-five years, has interpreted § 46a-60 (a) (1) to protect individuals who are regarded as physically disabled.[9] Faced with this question for the first time in 1989, the commission articulated that "it is not unreasonable to conclude . . . that [the legislature's] underlying intent to make the definition of physically disabled as broad as possible, could easily encompass protection of persons who are discriminated against because they are perceived to be disabled." (Internal quotation marks omitted.) *Complainant* v. *Respondent*, Commission on Human Rights & Opportunities, Opinion No. 86-10215 (June 27, 1989). In *Complainant*, an employee alleged that he had been discharged because his employer believed that he had contracted acquired immune deficiency syndrome (AIDS). Id. The employee did not contend that he was suffering from AIDS, but instead alleged that because his employer knew that he had been exposed to the AIDS virus and had been tested, he was perceived by his employer to be disabled by the AIDS virus. Id. The hearing examiner found compelling evidence that the employer's officials "became disturbed when they learned that [the employee] went to New York to be retested for the . . . virus, and fearing that he had the disease, decided to terminate him immediately." Id. After concluding that the stated reason for discharging the employee, absenteeism, was a pretext for discrimination, the hearing examiner concluded that the employer had discriminated against the employee in violation of § 46a-60 (a) (1) by discharging him from employment on the basis of a perceived physical disability. Id.

Since 1989, the commission consistently has interpreted § 46a-60 (a) (1) to protect individuals who are perceived to be physically disabled from employment discrimination and its reasoning has been articulated formally in numerous decisions. For example, in *Doe* v. *Ann Howard's Apricots Restaurant, Inc.*, Commission on Human Rights & Opportunities, Opinion No. 9110357 (September 22, 1993), a commission hearing officer reiterated that "it is as much a violation of [§ 46a-60 (a) (1)] . . . to discriminate against someone because [he or she] is perceived to have a [physical] disability, as it is to discriminate against someone because [he or she] does, in fact, have a disability." Similarly, the hearing officer in *Knowles* v. *Gilman Bros. Co.*, Commission on Human Rights & Opportunities, Opinion No. 9240221 (August 8, 1995), explained that "[d]enying claims because the victim of discrimination was not actually disabled is as offensive as denying a race-based claim solely because the wrongdoer mistakenly thought that the victim was of a particular ethnic or racial group. It is the act of discrimination that

these laws are intended to prohibit, regardless of whether the animus was improperly directed. In any event, rulings by other [commission] hearing officers demonstrate that perceived disabilities have been afforded protection under Connecticut discrimination laws for many years." In 2000, a commission hearing officer again articulated that "to prohibit an employer from discriminating against an employee due to his physical disability must necessarily include instances when the employer mistakenly perceives the individual to be disabled because in *both* instances an individual's impairment or affliction is falsely presumed to adversely affect their ability to perform their jobs. Whether the disability is actual or merely perceived, in each case the employer makes an assumption about capability that is unrelated to actual qualifications. In the employer's mind, which is the key to a finding of liability, each case is the same. Therefore, to allow an employer to escape from liability merely because the disability he thought he was discriminating against— fortunately for him or her—is not medically verifiable, would be to reward the exact behavior the statute was intended to prohibit. This cannot be the intended result of . . . § 46a-60 (a) (1)." (Emphasis in original.) *Scarfo* v. *Hamilton Sundstrand*, Commission on Human Rights & Opportunities, Opinion No. 9610577 (September 27, 2000); see also *Chily* v. *Milford Automatics, Inc.*, Commission on Human Rights & Opportunities, Opinion No. 9830459 (October 3, 2000) (employer discriminated against employee by discharging him on basis of employer's belief that employee, who had Bell's palsy, was seriously impaired, and noting close resemblance of symptoms of Bell's palsy to symptoms of stroke made it easy to understand why one might perceive employee as suffering from "major, long-term malady"); *Walsh* v. *Soundview Nursing Center*, Commission on Human Rights & Opportunities, Opinion No. 9430024 (January 28, 2000) (individual perceived as physically disabled is protected by act); *Downey* v. *Waterbury Retirement Board*, Commission on Human Rights & Opportunities, Opinion No. 8930113 (September 28, 1993) (employer discriminated against employee by refusing to reinstate him on basis of perception that employee was still disabled); *Williams* v. *Stratford*, Commission on Human Rights & Opportunities, Opinion No. 850296 (August 24, 1990) (employer discriminated against employee by rejecting him on basis of physical disability that did not exist).

Not only has the commission clearly articulated its long-standing interpretation of § 46a-60 (a) (1), but its interpretation is reasonable. The commission's conclusion that the act protects individuals who are regarded as physically disabled is consistent with the legislative history and purpose of the act and has also been endorsed by the trial courts. See, e.g., *Mills* v. *Re/Max Heritage*, Superior Court, judicial district of Stamford-

Norwalk, Docket No. CV-030193581 (March 16, 2005) (denying motion to strike that asserted that act does not recognize cause of action for discrimination on basis of perceived physical disability); *Commission on Human Rights & Opportunities ex rel. Tucker* v. *General Dynamics Corp.*, Superior Court, judicial district of New London, Docket No. 517054 (November 22, 1991) (5 Conn. L. Rptr. 700, 702) (agreeing with rationale followed in states of Wisconsin and New Jersey that person perceived as physically disabled is as much within protected class as person with actual disability).

Moreover, the fact that the legislature has not clarified the definition of physically disabled in response to the commission's consistent interpretation of § 46a-60 (a) (1) indicates the legislature's acquiescence to the commission's interpretation. *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 309 Conn. 422–23; see also *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 262 n.14, 788 A.2d 60 (2002) (legislative inaction in response to long-standing articulation of agency position indicates acquiescence to agency's interpretation). For the foregoing reasons, we conclude that the commission's interpretation of § 46a-60 (a) (1) is entitled to deference.

We disagree with Diageo's claim that the commission's decisions are inconsistent with the legislative history, which it contends merely demonstrates that the legislature intended that the act cover a "broad spectrum of physical conditions" and offers no guidance with respect to whether the act covers individuals who are regarded as physically disabled. Although the legislative history does not address expressly the issue of whether the act protects individuals who are regarded as physically disabled, the legislature's overarching intent to "stamp out discrimination on the basis of physical disability and a wide range of other disabilities (mental disability, learning disability, and mental retardation)"; *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 412; coupled with its efforts to be as inclusive as possible in defining the term physical disability, is consistent with interpreting § 46a-60 (a) (1) to protect individuals who are perceived to be physically disabled.

Similarly, we are not persuaded by Diageo's argument that the legislature's failure to amend the definition of physically disabled to include individuals who are regarded as physically disabled following the adoption of the Rehabilitation Act Amendments of 1974, Pub. L. No. 93-651, § 111, 89 Stat. 2-3,[10] and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (2012),[11] supports the trial court's conclusion that the act does not protect individuals who are perceived as physically disabled. Specifically, Diageo notes that bills proposed in 1995 and 1999, which included provisions to expand the definition of physically disabled, were not reported out of committee. See Senate Bill No. 1157,

1995 Sess.; Raised House Bill No. 6970, 1999 Sess. We decline to attach significance to a legislative committee's inaction because "in most cases the reasons for that lack of action remain unexpressed and thus obscured in the mist of committee inactivity." *In re Valerie D.*, 223 Conn. 492, 518 n.19, 613 A.2d 748 (1992). Moreover, we have refused to rely "on a legislative committee's rejection of a proposed bill as evidence of the intent of the entire General Assembly, which never voted on or discussed the proposal." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 526 n.14, 949 A.2d 1092 (2008).

After considering the intended scope of the term physically disabled in the context of the legislative history of the act and the decisions of the commission, we conclude that § 46a-60 (a) (1) protects individuals who are regarded as physically disabled from employment discrimination. To interpret the statute otherwise would be inconsistent with the legislature's efforts to define physically disabled to "cover as many people as possible under the definition and leave it open and broad"; 17 H.R. Proc., supra, p. 5130, remarks of Representative Thornton; and with the legislature's "consistent intent to increase protections for individuals with disabilities." *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 412. We decline to interpret § 46a-60 (a) (1) in a manner that would thwart this purpose. See id. As a result, we conclude that § 46a-60 (a) (1) prohibits employers from discriminating against individuals whom they regard as physically disabled and, therefore, reverse in part the judgment of the Appellate Court.

Diageo urges us to affirm the judgment of the Appellate Court on the alternative ground that even if § 46a-60 (a) (1) protects individuals who are regarded as physically disabled from employment discrimination, "[t]here was no evidence . . . to support [the] plaintiff's claim that [the defendants] discriminated against her because of a perception that she was physically disabled." We disagree.

The standards governing our review of the trial court's grant of summary judgment apply to our review of this claim. In the present case, as a procedural matter, we note that the defendants' motion for summary judgment and accompanying memorandum of law sought summary judgment with respect to the claim based on a perceived physical disability solely on the ground that Connecticut law does not recognize a cause of action for such claims. Despite the defendants' failure to meet its burden to establish the absence of a material fact as to whether the defendants perceived the plaintiff to be physically disabled, the plaintiff's objection to the motion for summary judgment noted nonetheless that "a question of fact exists as to whether the [d]efendant[s] perceived the [p]laintiff to be disabled and allegedly unable to work . . . ." In their reply memorandum

in support of the motion for summary judgment and during argument before the trial court, the defendants argued simply that "the plaintiff has offered no evidence . . . to suggest that . . . Levine thought she was physically disabled, thought that she had a chronic physical disability, impairment or infirmity." We disagree.

The amended complaint alleges that the plaintiff's employment was terminated on January 5, 2004, one day after she informed Levine that she needed surgery regarding a tumor on her right shoulder. The plaintiff's affidavit indicates that she missed four weeks of work in April, 2003, when she underwent stomach surgery, and that shortly after the surgery, Levine questioned her need to miss work for a medical appointment when she had been out of work for four weeks. The affidavit further indicates the plaintiff's belief that when she told Levine that she required surgery to remove a tumor from her shoulder, he perceived her medical condition to be worse than it was. Finally, the plaintiff's affidavit notes that she had required prior surgery to remove tumors during her employment with Diageo and that she had mentioned this to Levine shortly before she was discharged.

During oral argument before this court, Diageo also claimed that there was no dispute that it had decided to terminate the plaintiff's employment in November, before the plaintiff had mentioned the need for surgery. Contrary to Diageo's assertion, however, the plaintiff's complaint contends that the decision to terminate her employment was made the day after she notified the defendants of her need for surgery. Moreover, the plaintiff responded during oral argument that this issue is in dispute.

We conclude that the pleadings and affidavits in this case are sufficient to establish a question of material fact. As a result, we decline to affirm the judgment of the Appellate Court on this alternative ground.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the judgment of the trial court only with respect to count three of the plaintiff's complaint and to remand the case to that court with direction to deny the defendants' motion for summary judgment in part on count three, and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion ROGERS, C. J., and EVELEIGH and VERTEFEUILLE, Js., concurred.

[1] Although the plaintiff also named Colleen Ooten as a defendant, neither the original complaint nor the amended complaint alleged any conduct for which Ooten could be individually liable. As a result, the trial court determined that Ooten was a defendant in name only and the plaintiff did not challenge this conclusion in her appeal to the Appellate Court or in the present appeal. *Desrosiers* v. *Diageo North America, Inc.*, 137 Conn. App. 446, 449 n.2, 49 A.3d 233 (2012). For convenience, we refer to Diageo and Levine collectively as the defendants.

[2] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a

discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness . . . ."

Section 46a-60 was amended after the plaintiff's employment was terminated in 2004; see Public Acts 2011, No. 11-55, § 24; Public Acts 2011, No. 11-129, § 20; but those changes are not relevant to this appeal. For convenience, we refer to the current revision of § 46a-60.

[3] "[Levine] described this position as 'the practice of repackaging [Diageo's] products for holidays, special occasions, or other promotions.' " *Desrosiers* v. *Diageo North America, Inc.*, supra, 137 Conn. App. 449 n.3.

[4] "The first count alleged that the plaintiff was discriminated against on the basis of her race, color and national origin. The second count alleged that the plaintiff was discriminated against on the basis of her age." *Desrosiers* v. *Diageo North America, Inc.*, supra, 137 Conn. App. 450 n.4.

[5] In her appeal to the Appellate Court, the plaintiff also alleged that the trial court improperly had granted in part the defendants' motion for summary judgment with respect to the counts alleging negligent misrepresentation and promissory estoppel. The Appellate Court affirmed the judgment of the trial court with respect to both claims and the plaintiff does not challenge that determination in the present appeal. *Desrosiers* v. *Diageo North America, Inc.*, supra, 137 Conn. App. 460, 462.

[6] General Statutes § 46a-51 provides in relevant part: "(15) 'Physically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device . . . .

"(20) 'Mental disability' refers to an individual who has a record of, or is regarded as having one or more mental disorders . . . ."

[7] Public Act 74-346 provides in relevant part that "[a]n individual is physically disabled if he has any chronic physical handicap, whether congenital or resulting from bodily injury, organic processes or changes or from illness which is unrelated to the ability of such individual to perform a particular job, or to acquire, maintain or use a public accommodation."

[8] Pursuant to P.A. 75-346, now codified at General Statutes § 1-1f (b), "[a]n individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." Section 1-1f (b) defines physically disabled for purposes of § 46a-60 and other provisions. This definition of physically disabled also is codified at § 46a-51 (15).

[9] This court has never addressed the issue of whether § 46a-60 (a) (1) protects individuals who are perceived to be physically disabled. Although the commission argues that our decision in *Ann Howard's Apricots Restaurant, Inc.*, is instructive, we disagree. In the underlying proceedings in that case, the commission hearing officer found that the employee had established that his employer, "on the basis of its belief or perception that [the employee] had [acquired immune deficiency syndrome], had discriminated against [the employee] by failing to reinstate him following his leave of absence." *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 237 Conn. 224. The issue before this court, however, was whether the hearing officer had abused her discretion in failing to strike certain testimony. Id., 228. We did not consider whether an employee may bring a claim alleging discrimination on the basis of a perceived physical disability.

[10] The Rehabilitation Act Amendments of 1974 expanded the definition of physical disability to include individuals who are regarded as having a physical disability.

[11] Title 42 of the United States Code, § 12102, provides in relevant part: "(1) Disability

The term 'disability' means, with respect to an individual—

"(A) a physical or mental impairment that substantially limits one or more

major life activities of such individual;

    "(B) a record of such an impairment; or

    "(C) being regarded as having such an impairment . . . ."

———————————————————